UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LINDA DEPIERRO,

    Plaintiff,

vs.                             Case No. 6:01-CV-813-ORL-31DAB

MERCEDES HOMES, INC.,

    Defendant.
_____/

## PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

Plaintiff Linda Depierro, by and through undersigned counsel, respectfully moves to dismiss all counterclaims alleged against her in the answer to her amended complaint filed by Defendant Mercedes Homes, Inc. ("Mercedes").

### I. Conspiracy Counterclaim (Counterclaim, Count I)

Mercedes' conspiracy claim against Depierro must be dismissed because Mercedes lacks standing to bring the claim and because the claim in any event is not one upon which relief can be granted.

**A. Lack of Standing**

The constitutional minimum of standing contains three elements: (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest that is (a) concrete and particularized **and** (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders*

*of Wildlife,* 504 U.S. 555, 560-61 (1992).

Mercedes' lacks standing to bring the civil conspiracy claim because it suffered no "injury in fact" resulting from an alleged conspiracy between Depierro and her supervisor Stanfield to secretly tape record a male employee, Jimmy Ryan, making sexual comments to Depierro, in order to contrive a sexual harassment case against Ryan and thereby cause Mercedes to fire him. Mercedes alleges that the two women agreed that Stanfield would give Depierro a tape recorder so that Depierro could secretly tape Ryan making a sexual comment and then they would submit such tape recording to management. (Answer, p. 6, ¶24.) In furtherance of the alleged conspiracy, Stanfield allegedly gave Depierro a tape recorder and Depierro allegedly attempted to enlist a third employee, Melissa Gaudette, into the alleged plan to secretly tape Ryan. (Answer, p. 8, ¶31.) There is no allegation that any surreptitious tape recording of Ryan occurred or was attempted.

It is inconceivable that Stanfield's alleged act of merely giving a tape recorder to Depierro or Depierro's alleged attempt to enlist Gaudette could have harmed any legally protected interest of Mercedes at all, much less in any concrete and particularized way. While Mercedes alleges Depierro and Stanfield's conduct resulted in damage to its business reputation and disruption of its normal business operation, Mercedes' detailed factual allegations show no basis for establishing the requisite causal connection of such alleged harm to the two women's alleged conduct.

Moreover, Mercedes cannot rely on Depierro and Stanfield's alleged agreement alone to secretly tape record Ryan as a basis for standing. *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n. 4 (2d Cir. 1990) (a conspiracy agreement cannot by itself cause any injury).

Mercedes appears to be asserting a claim of injury on behalf of Ryan, the alleged target of the alleged conspiracy. However, it is well-established that "'[t]he plaintiff generally must assert

2

his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Conn v. Gabbert*, 526 U.S. 286, 292–93 (1999) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

Because Mercedes lacks standing to assert the civil conspiracy claim, the Court lacks subject matter jurisdiction over the claim. Therefore, dismissal of the claim under Fed. R. Civ. P. 12(b)(1) is warranted.

### B. Failure State Civil Conspiracy Claim

The elements of a civil conspiracy are the following: (a) an agreement between two or more parties; (b) to do an unlawful act or to do a lawful act by unlawful means; (c) the doing of some overt act in pursuance of the conspiracy; and (d) damage to the plaintiff as a result of the acts done under the conspiracy. *Lipsig v. Ramlawi*, 760 So. 2d 170, 180 (Fla. 3d DCA 2000). However, "[t]he gist of a civil action for conspiracy is not the conspiracy itself, but the civil wrong which is done pursuant to the conspiracy and which results in damage to the plaintiff." *Liappas v. Augoustis*, 47 So. 2d 582, 583 (Fla. 1950). Therefore, "[u]nder Florida law, 'an actionable conspiracy requires an actionable underlying tort or wrong.'" *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217–18 (11th Cir. 1999) (quoting *Florida Fern Growers Ass'n v. Concerned Citizens*, 616 So. 2d 562, 565 (Fla. 5th DCA 1993)).

Mercedes' detailed factual allegations reveal that it cannot state a claim for civil conspiracy.

*Absence of Unlawful Objective*

Mercedes' allegations show the absence of any agreement to do anything unlawful. Mercedes mistakenly assumes that surreptitiously tape recording Ryan's sexually harassing remarks would have constituted a violation of Chapter 934, Florida Statutes. However, nonconsensual tape

3

recording is not a *per se* illegal interception of an "oral communication" prohibited under § 934.03, Florida Statutes. As the Florida Supreme Court has stated,

> Section 934.02(2), in defining oral communication, expressly provides: "'Oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception *under circumstances justifying such expectation* and does not mean any public oral communication uttered at a public meeting." . . . From this language, it is clear that the legislature did not intend that every oral communication be free from interception without the prior consent of all the parties to the communication.

*State v. Inciarrano*, 473 So. 2d 1272, 1275 (Fla. 1985) (emphasis in original).

The expectation of privacy necessary to invoke protection under Chapter 934 is not simply a subjective expectation on the part of the speaker at issue. Rather, it must be an expectation of privacy that is reasonable under the circumstances both subjectively and from the viewpoint of society. *Id.* "A reasonable expectation of privacy under a given set of circumstances depends upon one's actual subjective expectation of privacy *as well as whether society is prepared to recognize this expectation as reasonable.*" *Id.* (emphasis in original).

Where a communication occurs and the intent of the speaker are key to determining whether the speaker has a reasonable expectation of privacy in the communication. "Society is willing to recognize a reasonable expectation of privacy in conversations conducted in a private home." *Jatar v. Lamaletto*, 758 So. 2d 1167, 1169 (Fla. 3d DCA 2000). But this recognition does not necessarily extend to a communication in a place of business, particularly where the intent of the speaker is to do harm. *See Inciarrano, supra.*, at 1275-76 (murderer had no expectation of privacy during conversation with victim at business office); *Jatar, supra.*, 1169-70 (extortion threat made at

4

victim's business office not protected.)

Mercedes does not specify the location of where the alleged planned secret taping was to occur. By failing to allege the location, Mercedes fails to allege circumstances establishing the reasonable expectation of privacy of the speaker required to establish a violation of Chapter 934.[1]

While arguably it can be inferred from the alleged facts that the allegedly planned secret taping was to have occurred at Mercedes' place of business, even if such taping were to have occurred on Mercedes' premises, Mercedes still could not establish the requisite reasonable expectation of privacy. Because the location would have been a place of business, rather than a private residence, there would have been a diminished expectation of privacy. Further, the communications that allegedly were to be taped—Ryan making sexual remarks to Depierro—would not be for a legitimate business purpose and most likely contrary to Mercedes' alleged sexual harassment policy. Moreover, in view of the fact that sexual remarks in the workplace can constitute actionable sexual discrimination under Title VII, it is obvious that society is unwilling to recognize a reasonable expectation of privacy in a male employee's making sexual remarks to a woman in the workplace. In these circumstances, Ryan would not have had a reasonable expectation of privacy in making sexual comments to Depierro at work, and, therefore, such remarks would not have been "oral communications" protected under Chapter 934.

Nor would Stanfield and Depierro's alleged agreement not to follow Mercedes' alleged rules

---

[1] It should be noted that although conspiracy is not listed in Fed. R. Civ. P. 9(b) as claim that must be pled with particularity, a conspiracy claim should be dismissed where the allegations are conclusory and vague. *Primerica Fin. Serv. v. Mitchell,* 48 F. Supp. 2d 1363, 1369 (S.D. Fla. 1998) (citing *Rindley v. Gallagher,* 890 F. Supp. 1540, 1557 (S.D. Fla. 1995), and *Fullman v. Graddick,* 739 F.2d 553, 557 (11th Cir. 1984).

5

concerning reporting of sexual constitute an agreement to do something unlawful. As discussed below in relation to Count II, an employee's failure to comply with rules pertaining to reporting of sexual harassment is not unlawful.

*Absence of Overt Act*

The acts that Mercedes alleges to be in furtherance of the alleged conspiracy do not qualify as "overt facts" necessary to establish a civil conspiracy. Specifically, Mercedes alleges that

> [i]n furtherance of the conspiracy, STANFIELD gave DEPIERRO a tape recorder so that she could secretly tape record statements by Jimmy Ryan, while, for her part, DEPIERRO, furthered the conspiracy by attempting to enlist Melissa Gaudette into the plan to secretly record statements by Jimmy Ryan.

(Answer, p. 8, ¶31) (caps in original).

These alleged acts amount to nothing more than preparation for the alleged planned secret taping of Ryan. As such, they do not constitute "overt acts" under Florida law. The distinction between an overt act and preparation was explained by a Florida court as follows:

> The "overt act" must be adapted to effect the intent to commit the particular crime but must be more than mere preparation. Preparation generally consists of devising or arranging the means or measures necessary for the commission of the offense. . . . The overt act must reach far enough toward accomplishing the desired result to amount to commencement of the consummation of the crime.

*Morehead v. State*, 556 So. 2d 523, 524 (Fla. 5th DCA 1990) (citations omitted). Stanfield's alleged giving of a tape recorder to Depierro and Depierro's alleged attempt to involve Gaudette were nothing more than arranging the means or measures for the alleged planned taping of Ryan.

*Absence of Underlying Tort*

Mercedes also fails to allege a civil wrong done pursuant to the alleged conspiracy. The only

6

conduct that Mercedes alleged to be in furtherance of the alleged conspiracy was Stanfield's allegedly giving Depierro a tape recorder and Depierro's alleged attempt to enlist Melissa Gaudette into the alleged plan to secretly tape Ryan. Neither of the alleged acts is sufficient to establish a tort. Moreover, as discussed below, alleged noncompliance with alleged reporting requirements under Mercedes' sexual harassment policy would not constitute an actionable wrong.

It is clear that under no set of facts can Mercedes establish a claim of civil conspiracy. Accordingly, its civil conspiracy claim should be dismissed with prejudice.

## II.     Failure-to-Report-Harassment Counterclaim (Counterclaim, Count II)

In this counterclaim, Mercedes alleges a claim for damages against Depierro for allegedly failing to abide by corporate rules for reporting incidents of sexual harassment. Mercedes' claim is not a recognized cause of action and appears to Mercedes' own creation. For this reason alone, the counterclaim should be dismissed.

Even if there were some court decision authorizing employers to sue sexual harassment claimants for failing to report harassment—the undersigned attorneys have found none—the Court is urged to reject the claim because it conflicts with the purposes and remedial scheme of Title VII.

Through its failure-to-report-harassment counterclaim, Mercedes is attempting to hold Depierro partially liable for her sexual harassment claim against it. Consequently, Mercedes' counterclaim is effectively an action for contribution against Depierro. However, actions for contribution for Title VII violations are not authorized. In *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77 (1981), the Supreme Court ruled that there is no federal statutory or common-law right to contribution for violations of Title VII. The court reasoned that nothing in Title VII expressly creates a private right of action for contribution, *id.* at 91; that employers are

not members of the class for whose especial benefit Title VII was enacted, *id.* at 91–92; that the "comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies," *id.* at 93–94; and that nothing in the law's legislative history provides support for implying a right to contribution in favor of employers under Title VII, *id.* at 94–95.

Although not a preemption case, the rationale of *Northwest Airlines* in refusing to permit a federal common law right of contribution in favor of employers for Title VII violations would extend to disallowing state common law claims for contribution for violations of the statute. Given that employers are not authorized under federal law to seek contribution for Title VII violations, it goes without saying that to allow an employer to do so under state law would create a preemptable conflict with Title VII. *See California Federal Savings & Loan Assn. v. Guerra*, 479 U.S. 272, 281 (1987) ("federal law may ... pre-empt state law to the extent it actually conflicts with federal law"); 42 U. S. C. § 2000h-4 (requiring preemption of state laws that are "inconsistent with any of the purposes of [Title VII], or any provision thereof").

Mercedes' counterclaim conflicts not just with Title VII's remedial scheme but also with the substantive operation of the statute. Mercedes is impermissibly attempting to convert the *Faragher* affirmative defense available in certain cases involving sexual harassment by a supervisor into a claim for damages against harassment victims. In *Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08 (1998), the Supreme Court held that

> [a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages ..

> . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . . . No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

Nothing in *Faragher*, or any other decision, authorizes using prong "(b)" of the affirmative defense as a basis for actionable claim for damages against sexual harassment claimants. Even if it did, the *Faragher* affirmative defense would be inapplicable, as Mercedes' pleadings do not allege harassment by a supervisor with immediate or successively higher authority over Depierro.

Further, to allow employers sue sexual harassment claimants for not reporting harassment would undercut imposition of Title VII liability in the many instances where a victim's failure to report harassment would serve as no defense to an employer. These include, but are not limited to, the following situations: "when the employer knew or should have known about the harassment and failed to take remedial action," *Dees v. Johnson Controls World Services*, 168 F.3d 417, 421 (11th Cir.1999); where a supervisor's harassment culminates in a tangible employment action, (see last sentence of above quotation from *Faragher*); in cases of supervisory harassment not culminating not a tangible employment action where the victim reasonably failed to report harassment[2]; and in cases of supervisory harassment not culminating in a tangible employment action where the employer failed to exercise reasonable care to prevent and correct promptly any sexually harassing behavior, (*see* prong "a" of *Faragher* affirmative defense).

---

[2] Note that a victim's failure to take advantage of any preventive or corrective opportunities provided by her employer can establish *Faragher*'s prong "(b)" only if such failure was unreasonable.

To allow failure-to-report-harassment claims against harassment victims would undercut Title VII also in that such could easily be misused a means to retaliate against sexual harassment claimants and intimidate them from bringing Title VII claims. In *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983), the Supreme Court explained how a lawsuit by an employer against an employee can means as a tool for retaliation and intimidation:

> A lawsuit no doubt may be used by an employer as a powerful instrument of coercion or retaliation. . . .[B]y suing an employee who files charges . . . or engages in other protected activities, an employer can place its employees on notice that anyone who engages in such conduct is subjecting himself to the possibility of a burdensome lawsuit. Regardless of how unmeritorious the employer's suit is, the employee will most likely have to retain counsel and incur substantial legal expenses to defend against it. Furthermore, . . . the chilling effect of a . . . lawsuit upon an employee's willingness to engage in protected activity is multiplied where the complaint seeks damages in addition to injunctive relief.

*Id.* at 740-41(citations omitted). Moreover, a number of courts including this Court have recognized that filing of a lawsuit or claim for the purpose of retaliation can constitute a violation of Title VII. See *EEOC v. Outback Steakhouse of Fla., Inc.*, 75 F. Supp. 2d 756 (N.D. Ohio 1999); *Cozzi v. Pepsi-Cola Bottlers Inc.*, 1997 U.S. Dist. LEXIS 7979, (N.D. Ill. 1997); *Harmar v. United Airlines*, 1996 U.S. Dist. LEXIS 5346, (N.D. Ill. 1996); *Urquiola v. Linen Supermarket, Inc.*, 1995 U.S. Dist. LEXIS 9902 (M.D. Fla. 1995); *EEOC v. Levi Strauss & Co.*, 515 F. Supp. 640, 641–42 (N.D. Ill. 1981); *EEOC v. Virginia Carolina Veneer Corp.*, 495 F. Supp. 775, 777 (W.D. Va. 1980).

Accordingly, Mercedes' unauthorized counterclaim in Count II should be dismissed with prejudice.

### Certificate of Conference

Although not required to do so by Local Rule 3.01(g), Stanfield's counsel conferred with

Mercedes' attorney in a good faith effort to resolve the issues raised by the instant motion, so as to avoid the time and expense involved in bringing the motion. The parties were unable to reach agreement.

## Certificate of Service

I certify that a copy of the foregoing was served via U.S. mail on this __7th__ day of January 2002, to Patrick Roche, 930 S. Harbor City Blvd., Suite 505, Melbourne, FL 32901.

Respectfully submitted,

Kathryn S. Piscitelli
Florida Bar No. 368598

Joseph Egan, Jr.
Florida Bar No. 180102
EGAN, LEV & SIWICA, P.A.
Post Office Box 2231
Orlando, Florida 32802
Phone: (407) 422-1400
Fax: (407) 422-3658
**Attorneys for Plaintiff**