UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION     JAN -7  PH 4: 49

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

LINDA DEPIERRO,

      Plaintiff,

vs.                       Case No. 6:01-CV-813-ORL-31DAB

MERCEDES HOMES, INC.,

      Defendant.

_____/

## MOTION BY ELEANOR STANFIELD TO DISMISS THIRD-PARTY COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

      Eleanor Stanfield, by and through undersigned counsel, respectfully requests that the Court

dismiss with prejudice the third-party complaint that Mercedes Homes, Inc. ("Mercedes"), filed

against her in this lawsuit, for the reasons stated below:

      1. Stanfield seeks dismissal of the third-party complaint pursuant to the Federal Rules of

Civil Procedure 12(b)(6) and 14(a), as well as the Case Management and Scheduling Order

governing the course of proceedings in this case, (Dkt. # 13). As discussed below, Mercedes' third-

complaint violates required procedures, is legally baseless, and constitutes unlawful retaliation in

violation of Title VII.

      2. Mercedes filed the third-party complaint against Stanfield on December 20, 2001 (Dkt.

# 17). The third-party complaint was incorporated into Mercedes' answer to Plaintiff Linda

Depierro's amended complaint. (Dkt. # 17, pp. 9–11).

      3. The plaintiff in this lawsuit, Linda Depierro, is suing Mercedes under Title VII of the 1964

Civil Rights Act for alleged sexual harassment and retaliation. Stanfield was Depierro's supervisor.



The third-party complaint seeks indemnification from Stanfield for allegedly failing to report alleged sexual harassment of Depierro, which allegedly resulted in Mercedes' not taking action to stop the harassment and, in turn, Depierro's lawsuit against Mercedes. (*See* Dkt. # 17, p. 10, ¶43–44.) In its prayer for relief, Mercedes demands judgment against Stanfield for all damages awarded to Depierro, as well as recovery of attorney's fees and costs incurred in prosecution of the third-party action. (Dkt. # 17, p. 11.)

4.   Mercedes neither sought nor obtained leave from the Court to file the third-party complaint or to otherwise join Stanfield as a party.

5.   Stanfield was served with the third-party complaint and a summons on December 26, 2001. (*See* Exhibit A.)

*Noncompliance with Fed. R. Civ. P. 14(a)*

6.   The third-party complaint must be dismissed in light of Mercedes' failure to obtain leave of court prior to filing it. Fed. R. Civ. P. 14(a) provides that:

> [t]he third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the *original* answer. *Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action.*

Fed. R. Civ. P. 14(a) (emphasis added.)  Mercedes served the original answer on September 18, 2001. (Exhibit B, Certificate of Service at p. 2.)  Because the third-party complaint was not filed within 10 days of service of the original answer, Mercedes was obliged to file a motion with notice to all parties and obtain leave of court before filing the third-party complaint.

*Noncompliance with Case Management Order*

7.   Mercedes' attempt to join Stanfield as a party also comes too late under the Case

2

Management and Scheduling Order. The deadline for filing motions to add parties was December 3, 2001. Mercedes filed the third-party complaint without the requisite motion nearly three weeks beyond that date.

*Failure to State Common-Law Indemnification Claim*

8.  Even in the absence of the fatal procedural flaws, the third-party complaint is subject to immediate dismissal on substantive grounds. For one thing, the third-party complaint on its face shows that Mercedes cannot establish an indemnification claim. The Florida Supreme Court has described a common-law claim for indemnity as follows: "Indemnity is a right which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other and *is allowable only where the Whole fault is in the one against whom indemnity is sought.*" *Houdaille Indus., Inc. v. Edwards*, 374 So.2d 490, 492-93 (Fla. 1979) (emphasis added). A corollary to the requirement that one from whom indemnity is sought is that the person who is seeking indemnity must be without fault. *Id.* at 493.

9.  Mercedes makes no allegation that the *whole* fault for alleged sexual harassment of Depierro lies with Stanfield. Nor does it allege that is without any fault.

10. Moreover, Mercedes' allegations, if taken as true, show that Mercedes does not view Stanfield as wholly responsible for the sexual harassment of Depierro. Stanfield did not sexually harass Depierro—Jimmy Ryan did. (*See* Dkt. # 17, pp. 9–10, ¶¶40–41). Further, while Stanfield allegedly did not report the harassment to management, neither did Depierro, who allegedly entered into an agreement with Stanfield not to report the harassment.(*See* Dkt. # 17, p. 10, ¶41.) In fact, Mercedes is seeking to hold not just Stanfield but also Depierro responsible and liable for not reporting the harassment. (*See* Dkt. # 17, pp. 2–3, ¶¶13–14 (affirmative defenses to Depierro

3

complaint); ¶¶33–36 (Count II counterclaim against Depierro)). Finally, Mercedes indirectly shows its own contribution to the alleged violation by admitting it failed to investigate or stop Ryan's alleged harassment of Depierro. (*See* Dkt. # 17, p. 10, ¶43.) Although it faults Depierro and Stanfield for allegedly not reporting the harassment, such admission shows its recognition that the unfulfilled duty to investigate and stop the harassment was its own.

11. These allegations show that Mercedes views Stanfield as only partially and indirectly responsible for the Title VII violation alleged against it as the employer. However, as noted above, a claim for common-law indemnification is available only when the person from whom indemnity is sought is entirely responsible and the person seeking indemnification is faultless. Indemnification is unavailable from joint tortfeasors. *See Houdaille, supra.,* 374 So.2d 493 ("A weighing of the relative fault of tortfeasors has no place in the concept of indemnity for the one seeking indemnity must be without fault.")

*Common-Law Indemnification and Contribution Claims for Title VII Violations Not Permitted.*

12. Regardless of whether Mercedes establish the elements of a common-law indemnification claim, its claim against Stanfield must be dismissed because it is has no right to such a claim for violations of Title VII.

13. In the seminal case of *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77 (1981), the Supreme Court ruled that there is no federal statutory or common-law right to contribution for violations of Title VII. The court reasoned that nothing in Title VII expressly creates a private right of action for contribution, *id.* at 91; that employers are not members of the class for whose especial benefit Title VII was enacted, *id.* at 91–92; that the "comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not

4

to authorize additional remedies," *id.* at 93–94; and that nothing in the law's legislative history provides support for implying a right to contribution in favor of employers under Title VII, *id.* at 94–95.

14. The court's rationale would apply as well to the question of whether a federal common-law right to indemnification in favor of an employer for Title VII violations is available, given that indemnification is similar to contribution[1]. *See Anderson v. Electrical Workers (IBEW), Local No. 3,* 751 F.2d 546, 548 (2d Cir. 1984) (the rationale of *Northwest Airlines* rationale extends to claims for indemnification). Nevertheless, Mercedes' indemnification claim here really is a mislabeled contribution claim because, as discussed above, the allegations, if taken as true, show Stanfield to be partially responsible for the alleged Title VII violation. That being so, there is no question that *Northwest Airlines* trumps the Mercedes "indemnification" claim.

15. Further, in a case directly on point, it was held that an employer could not bring a third-party claim against a personnel manager who allegedly failed to investigate or report sexual harassment brought to her attention by sexual harassment plaintiffs in the underlying action of the lawsuit. *Lipiro v. Remee Products,* 75 F. Supp. 2d 174, 176–77 (S.D. N.Y. 1999). Similarly to Mercedes in the instant case, the employer in *Lipiro* alleged that the personnel manager failed to perform required duties of investigating and reporting sexual harassment allegations brought to her attention by the plaintiffs, that those omissions exposed it to valid claims of the plaintiffs, and that

---

[1] Contribution is only available against joint tortfeasors and cannot be awarded against a party who is entirely at fault. *See Dade County Sch. Bd. v. Radio Station WQBA,* 731 So. 2d 638, 641 n. 2 (Fla. 1999) (and citations therein). As discussed above, the reverse is true for indemnification—it is not available against joint tortfeasors and is allowable only where the person from whom it is sought is wholly at fault.

5

the personnel manager was liable to it for all or part of the plaintiffs' claims against it. *Id.* at 176. The

court dismissed the third-party complaint on authority of *Northwest Airlines*, as well as precedent

within the circuit establishing that individual liability for Title VII is unavailable. *Id.* at 176–77.

*Individual Capacity Suits for Title VII Violations Unavailable*

16. Mercedes' claim against Stanfield must fail also because it seeks to hold her individually

liable for Title VII violations. Over a decade ago, the Eleventh Circuit ruled in *Busby v. City of*

*Orlando,* 931 F.2d 764, 772 (11th Cir. 1991), that

> [i]ndividual capacity suits under Title VII are . . . inappropriate. The
> relief granted under Title VII is against the *employer*, not individual
> employees whose actions would constitute a violation of the Act.

17. While Depierro did not file an individual capacity suit against Stanfield, Mercedes' third-

party claim attempts to achieve that very result indirectly by seeking to shift liability to Stanfield for

the alleged Title VII violation. *See Lipiro, supra.,* at 177 ("[T]he original plaintiffs here could not

have sued [the personnel manager] directly. Therefor, [the employer] cannot now shift its Title VII

liability to [the personnel manager] by seeking contribution.").

*As a State Common-Law Claim, Mercedes' "Indemnification" Claim Is Preempted*

18. To the extent that Mercedes' indemnification claim (which is really a contribution claim)

is being brought under Florida common law, the claim is preempted by Title VII.

19. Although not a preemption case, the rationale of *Northwest Airlines* in refusing to permit

a federal common law right of contribution in favor of employers for Title VII violations would

extend to disallowing state common law claims for contribution or indemnification for violations

of the statute. As discussed above, the court found that the comprehensive remedial scheme

6

evidenced a congressional intent not to authorize additional remedies, and that nothing in the legislative history supported implying a right to contribution. Given that employers are not authorized under federal law to seek contribution or indemnification for Title VII violations, it goes without saying that to allow an employer to do so via state common law would create a preemptable conflict with federal law. *See California Federal Savings & Loan Assn. v. Guerra*, 479 U.S. 272, 281 (1987) ("federal law may . . . pre-empt state law to the extent it actually conflicts with federal law"); 42 U. S. C. § 2000h-4 (requiring preemption of state laws that are "inconsistent with any of the purposes of [Title VII], or any provision thereof").

*Mercedes Is Misusing the Court's Proceedings to Commit a Title VII Violation*

20. An additional reason why the third-party complaint should be dismissed is that Mercedes is using it as a vehicle for unlawful retaliation against Stanfield.

21. In *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983), the Supreme Court explained how a lawsuit by an employer against an employee can means as a tool for retaliation and intimidation:

> A lawsuit no doubt may be used by an employer as a powerful instrument of coercion or retaliation. . . .[B]y suing an employee who files charges . . . or engages in other protected activities, an employer can place its employees on notice that anyone who engages in such conduct is subjecting himself to the possibility of a burdensome lawsuit. Regardless of how unmeritorious the employer's suit is, the employee will most likely have to retain counsel and incur substantial legal expenses  to defend against it.  Furthermore, . . . the chilling effect of a . . . lawsuit upon an employee's willingness to engage in protected activity is multiplied where the complaint seeks damages in addition to injunctive relief.

*Id.* at  740-41(citations omitted).

22. A number of courts including this Court have recognized that filing of a lawsuit or claim

7

for the purpose of retaliation can constitute a violation of Title VII. See *EEOC v. Outback Steakhouse of Fla., Inc.,* 75 F. Supp. 2d 756 (N.D. Ohio 1999); *Cozzi v. Pepsi-Cola Bottlers Inc.,* 1997 U.S. Dist. LEXIS 7979, (N.D. Ill. 1997); *Harmar v. United Airlines,* 1996 U.S. Dist. LEXIS 5346, (N.D. Ill. 1996); *Urquiola v. Linen Supermarket, Inc.,* 1995 U.S. Dist. LEXIS 9902 (M.D. Fla. 1995); *EEOC v. Levi Strauss & Co.,* 515 F. Supp. 640, 641–42 (N.D. Ill. 1981); *EEOC v. Virginia Carolina Veneer Corp.,* 495 F. Supp. 775, 777 (W.D. Va. 1980).

23. To allow employers to seek contribution or indemnification from employees under Title VII would give them the green light to pursue such claims. If so legitimized, such claims could easily be used  as a means of retaliating against and intimidating employees who file lawsuits under Title VII and discouraging others from filing charges or lawsuits under Title VII.

24.  The 20-year-old *Northwest Airlines* decision all but put a stop to attempts by employers to seek contribution or indemnification for Title VII violations. However, despite *Northwest Airlines'* clear precedent disallowing such claims, and despite the fact that Mercedes could not in any event make the elements of a common-law indemnification claims, Mercedes proceeded with filing its unauthorized indemnification claim against Stanfield.

25. Stanfield is convinced that Mercedes' filed the third-party complaint against her only to retaliate against her. Stanfield recently filed her own Title VII lawsuit against Mercedes with this Court, which is pending before Judge Conway, (Case No. 6:01-cv-814-Orl-22KRS).[2] The filing and

---

[2] The Court may look beyond the pleadings to consider matters of public record in ruling on a motion to dismiss. *Trustmark Insurance Co. v. ESLU, Inc. f/k/a Excess & Stop-Loss Underwriters, Inc.*, 153 F. Supp. 2d 1322, 1325 n. 1 (M.D. Fla. 2001).

prosecution of Stanfield's lawsuit constitutes protected activity under Title VII.[3] Notably, the very day after Mercedes answered Stanfield's amended complaint in her lawsuit, (*see* Dkt. entry No. 18 in Case No. 6:01-cv-814-Orl-22KRS), it filed the groundless third-party complaint against her in this proceeding. These facts raise a strong inference of unlawful retaliation.

26. The Court should not tolerate Mercedes' unauthorized abuse of its proceedings for no purpose other than to retaliate against a third party in violation of Title VII. *See Bill Johnson's,* 461 U.S. at 743–44 (baseless lawsuit with the intent of retaliating against an employee for the exercise of rights protected by NLRA can be enjoined—such suit is outside the scope of First Amendment protection and the state interests do not enter into play).

*Conclusion*

27. Dismissal of the third-party complaint against Stanfield with prejudice is warranted. In disobedience of Fed. R. Civ. P. 14(a) and the Case Management and Scheduling Order, Mercedes filed the third-party complaint without obtaining leave of court, and it did so beyond the deadline for adding parties. Even if Mercedes complied with the requisite procedures, dismissal would still be required. Because employers have no right of contribution or indemnification for Title VII violations, because individuals such as Stanfield may not be held liable for Title VII violations, and because Mercedes in any event cannot establish a common law indemnification claim, Stanfield is not someone "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim

---

[3] Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). Stanfield's lawsuit falls within both the opposition and participation clauses of this provision.

against the third-party plaintiff, " Fed. R. Civ. P. 14(a). For the same reasons, Mercedes' third-party complaint against Stanfield fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In addition, Mercedes is improperly attempting to use these proceedings to unlawfully retaliate against Stanfield for her own Title VII lawsuit against it.

For the foregoing reasons, Eleanor Stanfield respectfully requests that the Court dismiss with prejudice the third-party complaint that Mercedes Homes, Inc., filed against her in this lawsuit.

### Certificate of Conference

Although not required to do so by Local Rule 3.01(g), Stanfield's counsel conferred with Mercedes' attorney in a good faith effort to resolve the issues raised by the instant motion, so as to avoid the time and expense involved in bringing the motion. The parties were unable to reach agreement.

### Certificate of Service

I certify that a copy of the foregoing was served via U.S. mail on this 7th day of January 2002, to Patrick Roche, 930 S. Harbor City Blvd., Suite 505, Melbourne, FL 32901.

Respectfully submitted,

Kathryn S. Piscitelli
Florida Bar No. 368598

Joseph Egan, Jr.
Florida Bar No. 180102
EGAN, LEV & SIWICA, P.A.
Post Office Box 2231
Orlando, Florida 32802
Phone: (407) 422-1400
Fax: (407) 422-3658
**Counsel for Stanfield**

10

COPY

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:01-cv-813-Orl-31DAB

LINDA DEPIERRO,

      Plaintiff,

v.

MERCEDES HOMES, INC.

      Defendant

_____

MERCEDES HOMES, INC.,

      Third Party Plaintiff,

v.

ELEANOR STANFIELD,

      Third Party Defendant.

_____/

SHEILA M. HUFF
SPECIAL PROCESS SERVER
P.O. BOX 948074
MAITLAND, FL 32794-8074
(407) *** -****
TIME: _____ DATE: _____

## SUMMONS

TO:   ELEANOR STANFILED, Third Party Defendant
      c/o Joseph Egan, Jr., Esquire
      231 E. Colonial Drive
      Orlando, Florida 32801

You are hereby summoned and required to serve upon Patrick F. Roche, Esquire,

Attorney for Defendant/Third Party Plaintiff, Mercedes Homes, Inc., whose address is 930

S. Harbor City Boulevard, Suite 505, Melbourne, Florida 32901, an answer to the Third

Party Complaint which is herewith served upon you, within twenty (20) days after service

EX. A

of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment

by default will be taken against you for the relief demanded in the Complaint.

SHERYL L. LOESCH

Clerk of Court

[Seal of the U.S. District Court]

Dated:  12-19-01

2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LINDA DEPIERRO,

        CASE NO.: 6:01-Cv-813-Orl-31DAB

    Plaintiff,

v.

MERCEDES HOMES, INC.,

    Defendant.

_____/

## ANSWER TO PLAINTIFF'S AMENDED COMPLAINT, AFFIRMATIVE DEFENSES COUNTERCLAIM, THIRD PARTY COMPLAINT AND DEMAND FOR JURY TRIAL

Defendant, MERCEDES HOMES, INC., by and through its undersigned attorney, hereby answers the Amended Complaint of the Plaintiff, LINDA DEPIERRO, by corresponding paragraphs as follows:

1.     Admitted, except that MERCEDES denies that the Plaintiff was terminated.

2.     Admitted.

3.     Admitted for jurisdictional purposes only.

4.     Admitted.

5.     Denied.

6.     Admitted.

7.     Denied.

8.     Denied.

9.     Denied.

10.     Denied.

11.     Denied.

## AFFIRMATIVE DEFENSES

12.   As its first separate and distinct affirmative defense. MERCEDES HOMES. INC. would show that the Plaintiff was never terminated from her employment with the Defendant; rather, the Plaintiff voluntarily resigned her employment.

13.   As its second separate and distinct affirmative defense. Defendant would show that the alleged perpetrator of sexual harassment against Plaintiff was in a non-supervisory relationship with the Plaintiff and that she never brought complaints or otherwise brought to the attention of Defendant's management that she was subjected to sexual harassment by a co-worker; and, in fact, the Plaintiff took deliberate action to ensure Defendant's management would not learn of her allegations against Jimmy Ryan.

14.   As its third separate and distinct affirmative defense. MERCEDES would show that Plaintiff is estopped from bringing a sexual harassment claim against MERCEDES in that, although Plaintiff, even though MERCEDES had in place written procedures for reporting sexual harassment. and the plaintiff at the time of the commencement time of her employment signed a statement wherein she stated she had read and understood the procedures, started to work for MERCEDES in February 28, 2000, she did not complain to anyone that she was allegedly being sexually harassed by a fellow employee who did not have a supervisory relationship with her, until sometime during July 2000, at which time, she finally told her friend and immediate supervisor, Eleanor "Sugar Stanfield, that Jimmy Ryan had made a sexually related remark to her. At the same time that she told her supervisor about the sexually

2

related statement, the Plaintiff made her supervisor promise that she would not repeat the incident to any of her own superiors at MERCEDES. Had Plaintiff timely reported the alleged sexual harassment of herself as she was obligated to do and not otherwise made Stanfield promise to keep her statement to her about Ryan a secret. MERCEDES would have investigated her allegation concerning Ryan and would have otherwise taken corrective action to protect Plaintiff: having unreasonably failed to take advantage of MERCEDES' preventative and/or corrective opportunities to avoid harm to herself. Plaintiff is estopped from bringing a sexual harassment claim against MERCEDES.

15.   As its fourth separate and distinct affirmative defense, MERCEDES would show that Plaintiff has failed to fullfill a condition precedent to bringing a claim against MERCEDES for sexual harassment in that she failed to report the alleged sexual harassment she was subjected to by co-worker, Jimmy Ryan and since all of the alleged sexual harassment of the Plaintiff by Ryan occurred either over the telephone or outside the presence of other employees. MERCEDES cannot be charged with having constructive knowledge.

16.   As its fifth separate and distinct affirmative defense. MERCEDES would show that DEPIERRO voluntarily resigned her employment from MERCEDES. and was not constructively terminated.

17.   As its sixth separate and distinct affirmative defense. MERCEDES would show that any failure by MERCEDES to pay Plaintiff compensation due her did not result from any intention to retaliate against her, but was simply the result of a good faith mistake

3

on MERCEDES' part.

18.    Defendant is obligated to pay the undersigned attorney a reasonable fee for his services in the defense of this action.

19.    Pursuant to Title VII, Defendant is entitled to recover its reasonable attorney fees and costs from the Plaintiff because her action was brought in bad faith, is lacking in merit, and without probable cause.

WHEREFORE, Defendant, MERCEDES HOMES, INC. prays the Plaintiff, LINDA DEPIERRO, take nothing under her Amended Complaint against Defendant in this action and Defendant recover from her its reasonable attorney fees and costs incurred from the Defense of this action.

## COUNTERCLAIM

Defendant, MERCEDES HOMES, INC. (hereinafter "MERCEDES") counterclaims against Plaintiff, LINDA DEPIERRO (hereinafter "DEPIERRO"), and in support thereof states as follows:

20.    This is an action by MERCEDES against DEPIERRO for damages that exceed $15,000.00.

21.    On or about December, 2000, DEPIERRO was recruited to work for MERCEDES in the capacity of a sales associate by ELEANOR "SUGAR" STANFIELD (hereinafter "STANFIELD"), who was then the vice-president of sales for MERCEDES' Orlando Division; at approximately the same time, STANFIELD also recruited Michael Carver (hereinafter "Carver") as a builder for MERCEDES' Orlando Division; both Carver and DEPIERRO had formerly worked under STANFIELD at the Bradford Company. As an inducement to encourage both Carver

4

and DEPIERRO to come to work for MERCEDES, STANFIELD represented to both of them that they would both eventually be assigned to work at an upscale subdivision known as "John's Cove", which was scheduled to open sometime during the summer of 2000.

22.     DEPIERRO actually went to work for MERCEDES on February 28, 2000. At the time that she commenced her employment with MERCEDES, she received written documentation as to the corporation's policy against sexual harassment and was advised that any employee who is subject to harassment or intimidation should immediately contact their immediate supervisor, the company's director of human resources, or another member of the corporation's senior management. She was further advised that all complaints of sexual harassment would be properly and confidentially investigated and that any employee who violated the policy, would be subject to an appropriate disciplinary action, up to and including discharge. At the time of her employment, DEPIERRO signed a statement wherein she acknowledged that she had read and understood MERCEDES' policy against sexual harassment and its procedures for reporting incidents involving sexual harassment.

23.     On or about July, 2001, STANFIELD and DEPIERRO learned that Mike Carver was not going to be assigned to be the builder at the John's Cove Subdivision after all; instead, another builder, Jimmy Ryan, was designated to be the builder for that subdivision.

24.     On or about July, 2001, DEPIERRO told STANFIELD that Jimmy Ryan had made a sexually related statement to her; STANFIELD and DEPIERRO then orally agreed

5

that STANFIELD was not to communicate DEPIERRO's allegation with other members of MERCEDES' management. Instead, it was their goal to bring about Jimmy Ryan's termination by MERCEDES so that Carver would then be the builder at John's Cove instead of Jimmy Ryan. It was agreed that STANFIELD would give DEPIERRO a tape recorder so that she could then entrap Jimmy Ryan into making a sexually related statement, the tape recording of which they would then be passed on to STANFIELD'S superiors in the corporation's management. Subsequent to this agreement between STANFIELD and DEPIERRO, STANFIELD called in another MERCEDES' employee Melissa Gaudette, who was DEPIERRO's sales partner, and told her about the sexually related statement that Jimmy Ryan had allegedly said to DEPIERRO. STANFIELD then told Melissa Gaudette that she had purchased a tape recorder, and had taught DEPIERRO how to use the tape recorder. STANFIELD then told Melissa Gaudette that she wanted to "bust Jimmy Ryan" and that they needed to record Jimmy Ryan making an inappropriate statement.

25.   Approximately two to three weeks after her conversation with STANFIELD, Melissa Gaudette, believing that STANFIELD's and DEPIERRO's proposed course of conduct of entrapping Jimmy Ryan by secretly tape recording him making a sexually related statement was morally both wrong and in violation of the corporation's policy and protocol as pertained to the handling of sexual harassment complaints, went to the Orlando Division president and told her about her conversation with STANFIELD; this was the first time that the Division President had ever received any knowledge of Jimmy Ryan's alleged sexually related statement to DEPIERRO.

26.  On the following day, August 15, 2000, the Division President met with STANFIELD concerning Melissa Gaudette's statement to her on the previous day. Upon being confronted by the Division President, STANFIELD lied to her by denying that she had purchased a tape recorder and that she had planned to secretly record the oral statements of Jimmy Ryan.

27.  STANFIELD was subsequently fired by MERCEDES for her failure to comply with company policy, lying to the Division President, and other legitimate business related reasons.

28.  On August 16, 2001, MERCEDES' Division President met with DEPIERRO concerning Jimmy Ryan's alleged vulgarity towards her. During this meeting, Ms. DEPIERRO was asked why she had not followed company policy on reporting complaints of sexual harassment and asked DEPIERRO if she wanted to make a formal complaint against Jimmy Ryan; DEPIERRO told the Division President that she did not want to file such a complaint.. During this meeting, DEPIERRO told the Division President that she would not be terminated, or otherwise disciplined; approximately one week later, DEPIERRO voluntarily resigned her employment with MERCEDES and subsequently went to work for another employer under STANFIELD's supervision.

## COUNT I

29.  Defendant, MERCEDES realleges and incorporates paragraphs 16 through 28 as if fully set forth herein.

30.  On or about July, 2000, DEPIERRO and STANFIELD entered into a civil conspiracy

to wrongfully violate the duty they each owed to MERCEDES as their employer to exercise diligence and good faith in the performance of their duties, and to wrongfully violate Chapter 934, Florida Statutes by maliciously entering into an agreement that DEPIERRO would secretly and without his knowledge or consent, illegally tape record her oral conversations with Jimmy Ryan, in order to contrive a sexual harassment case against Jimmy Ryan and thereby bring about his dismissal from MERCEDES.

31.    In furtherance of the conspiracy, STANFIELD gave DEPIERRO a tape recorder so that she could secretly tape record statements by Jimmy Ryan; while, for her part, DEPIERRO, furthered the conspiracy by attempting to enlist Melissa Gaudette into the plan to secretly record statements by Jimmy Ryan.

32.    As a result of the civil conspiracy between STANFIELD and DEPIERRO, MERCEDES has sustained damages, including, but not limited to, damage to its business reputation and disruption of its normal business operation.

WHEREFORE, MERCEDES demands judgment against DEPIERRO for damages.

## COUNT II

33.    MERCEDES realleges and incorporates herein paragraphs 16 through 28 as if fully set forth herein.

34.    As a MERCEDES employee, DEPIERRO had a duty to obey all reasonable rules and orders and instructions of MERCEDES as her employer and to exercise diligence and good faith in matters relating to her employment.

35.    DEPIERRO failed to perform this obligation by her negligent or intentional failure

8

to obey the corporation's rules as they pertain to the reporting of incidents involving sexual harassment.

36. As a consequence of DEPIERRO's aforestated failure to obey MERCEDES reasonable rules, orders, instructions as they pertain to the reporting of sexual harassment incidents, and by her otherwise failure to exercise diligence and good faith in matters relating to her employment, MERCEDES has sustained damage.

WHEREFORE, MERCEDES demands judgment against DEPIERRO for damages.

## THIRD PARTY COMPLAINT

Third Party Plaintiff, MERCEDES HOMES, INC. (hereinafter "MERCEDES"), hereby sues Third Party Defendant, ELEANOR "SUGAR" STANFIELD, (hereinafter "STANFIELD") and as grounds therefore states as follows:

37. This is an action by MERCEDES for common law indemnification against STANFIELD for damages that exceed $15,000.00.

38. MERCEDES has been sued by a former non-supervisory employee, LINDA DEPIERRO, who, while she was employed by MERCEDES, came under the direct supervision of STANFIELD.

39. LINDA DEPIERRO has filed an Amended Complaint against MERCEDES, a copy of which is attached.

40. Pursuant to her Amended Complaint, LINDA DEPIERRO is seeking to recover damages from MERCEDES for the alleged sexual harassment of herself by a MERCEDES' employee, Jimmy Ryan.

41. On or about July, 2000, DEPIERRO told STANFIELD, that she was being sexually

9

harassed by Jimmy Ryan who, with respect to LINDA DEPIERRO, was a non-supervisory employee. It was agreed by LINDA DEPIERRO and STANFIELD that the alleged sexual harassment of LINDA DEPIERRO by Jimmy Ryan would not be reported to STANFIELD's superiors; consequently, the alleged sexual harassment of LINDA DEPIERRO by Jimmy Ryan went unreported to MERCEDES' management until it was ultimately reported second hand to a Division President by a co-worker of LINDA DEPIERRO.

42.   STANFIELD was familiar with MERCEDES' written procedures for handling sexual harassment complaints and, in fact, upon first entering her employment with MERCEDES, signed a statement that she had read and understood the procedures. Further, under Florida Law, STANFIELD owed MERCEDES a duty to exercise diligence and good faith in matters relating to her employment.

43.   Had STANFIELD complied with her duty as a supervisory employee of MERCEDES to immediately report the alleged sexual harassment of LINDA DEPIERRO by Jimmy Ryan to her own supervisor, MERCEDES was not through no fault of its own, able to investigate or otherwise eliminate the alleged sexual harassment of LINDA DEPIERRO by Jimmy Ryan.

44.   As a result of STANFIELD's wrongful conduct in failing to report the alleged sexual harassment of LINDA DEPIERRO by Jimmy Ryan, MERCEDES is placed in a position with respect to LINDA DEPIERRO where it must necessarily incur expenses to protect its interest, including attorney fees and costs.

45.   Pursuant to Florida law, MERCEDES is entitled to recover from STANFIELD not

10

only the attorney fees incurred in the prosecution of this third-party action, but also any attorney fees and costs that it is required to pay as a result of LINDA DEPIERRO's action against MERCEDES.

WHEREFORE, MERCEDES demands judgment against Third-Party Defendant, STANFIELD, for all damages that a judged against Defendant in favor of Plaintiff, and for recovery of MERCEDES attorney fees and costs incurred in the prosecution of this third-party action.

## DEMAND FOR JURY TRIAL

MERCEDES demands a trial by jury for all claims under its Counterclaim and its Third-Party Complaint.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via facsimile and U.S. Mail to Joseph Egan, Jr., Esquire, and Kathryn S. Piscitelli, Esquire, Egan, Lev & Siwica, P.A., Post Office Box 2231, Orlando, Florida 32802, this _18th_ day of December, 2001.

PATRICK F. ROCHE
Florida Bar No. 570397
FRESE, NASH & HANSEN, P.A.
930 S. Harbor City Blvd.,
Suite 505
Melbourne, Florida 32901
(321) 984-3300
Attorney for Defendant

11

**FILE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LINDA DEPIERRO,

      Plaintiff,

vs.                                   Case No. 6:01-cv-813-Orl-31DAB
                                        Jury trial demanded

MERCEDES HOMES, Inc.

      Defendant.

_____/

## AMENDED COMPLAINT

      Plaintiff, LINDA DEPIERRO, files this amended complaint against Defendant, MERCEDES HOMES, for violations of federal law. Plaintiff is seeking declaratory and injunctive relief, as well as damages provided for by law.

### Parties

    1. Plaintiff LINDA DEPIERRO is a natural person who lives in Seminole County, Florida. Plaintiff worked as a Sales Associate for Mercedes Homes from about February 28, 2000 until she was terminated on or about August 25, 2000.

    2. Defendant MERCEDES HOMES, INC. (hereinafter referred to as Mercedes Homes), is a corporation authorized to do business in Florida. Mercedes Homes is a home builder, with business locations in Orange, Seminole and Brevard Counties, Florida.

## Jurisdiction and Venue

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), 2201(a) and 2202. The instant lawsuit is authorized by and brought pursuant to 42 U.S.C. §2000e-5(f).

4. Venue is proper in this Court, pursuant to 28 U.S.C. §1391(b), as the events giving rise to this lawsuit occurred in Orange County, Florida.

## Title VII Claims

5. This is an action for sex discrimination and retaliation under Title VII of the 1964 Civil Rights Act.

6. Defendant is an "employer" within the meaning of Title VII.

7. Plaintiff was subjected to hostile working conditions, including indecent and sexually offensive behavior, while employed by the Defendant. Such conditions were so severe that they altered Plaintiff's conditions of employment.

8. Plaintiff was subjected to different working conditions than male employees.

9. Plaintiff was forced from her employment on account of the unlawful working conditions and retaliated against for objecting to and  opposing Defendant's discrimination and for filing a charge with the EEOC. Retaliatory actions against Plaintiff included, but were not limited to, refusing to protect the Plaintiff from the hostile working conditions, forcing the Plaintiff to leave her position with the Defendant, and denying Plaintiff compensation, including commissions and severance, she was owed as result her work for the Defendant.

10. Plaintiff satisfied all conditions precedent for bringing suit under Title VII.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S. Mail to Patrick Riche, Esquire, Free, Nash & Hansen, P.A., 930 S. Harbor City Boulevard, Ste. 505, Melbourne, Florida 32901, on this __30__ day of December 2001..

Lindsay N. Oyewale, Esquire
Florida Bar No. 269610

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LINDA DEPIERRO,

        Plaintiff,

CASE NO.: 6:01-Cv-813-Orl-31DAB

v.

MERCEDES HOMES, INC.,

        Defendant.

_____/

## ANSWER

Defendant, MERCEDES HOMES, INC., byand through its undersigned attorney, hereby answers the Complaint in this action of the Plaintiff, LINDA DEPIERRO, by corresponding paragraphs as follows:

1.    Denied. Defendant admits that the Plaintiff is a natural person. Defendant is without knowledge as to whether the Plaintiff presently lives in Seminole County, Florida. Defendant admits that the Plaintiff worked as a Sales Associate for MERCEDES HOMES, INC., from about February 28, 2000 until on or about about August 25, 2000. However, Defendant denies that the Plaintiff was ever "terminated" form the employment of MERCEDES HOMES, INC.; the Defendant voluntarily resigned from employment on or about August 25, 2000.

2.    Admitted.

3.    Admitted.

4.    Admitted.

5.    Denied.

*Ex. B*

6.    Admitted.

7.    Denied.

8.    Denied.

9.    Denied.

10.   Denied.

11.   Denied.

12.   Defendant is obligated to pay the undersigned attorney a reasonable fee for his

services in the defense of this action.

13.   Pursuant to Title VII, Defendant is entitled to recover its reasonable attorney fees and

costs from the Plaintiff.

WHEREFORE, Defendant, MERCEDES HOMES, INC., prays that the Plaintiff, LINDA

DEPIERRO take nothing under her Complaint against the Defendant in this action and that the

Defendant recover from her its reasonable attorney's fees and costs incurred during the defense of

this action.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S.

Mail to Joseph Egan, Jr., Esquire, and Kathryn S. Piscitelli, Esquire, Egan, Lev & Siwica, P.A., Post

Office Box 2231, Orlando, Florida 32802, this _____ day of August, 2001.

PATRICK F. ROCHE
Florida Bar No.  570397
FRESE, NASH & HANSEN, P.A.
930 S. Harbor City Blvd.,
Suite 505
Melbourne, Florida 32901
(321)984-3300
Attorney for Defendant