# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

LINDA DEPIERRO,
    Plaintiff,

-vs-                                        Case No. 6:01-cv-813-Orl-31DAB

MERCEDES HOMES, INC.,
    Defendant, Third Party
    Plaintiff

v.

ELEANOR STANFIELD,
    Third Party Defendant.

___

ELEANOR STANFIELD,
    Plaintiff,

v.                                            Case No. 6:01-Cv-814-Orl-31DAB

MERCEDES HOMES, INC.,
    Defendant.

___

## ORDER

This Court has for its consideration Plaintiff Linda Depierro's Motion to Dismiss Defendant Mercedes Homes' Counterclaims and Incorporated Memorandum of Law (Doc. # 18, filed in case no. 6:01cv813), Plaintiff/Third-Party Defendant Eleanor Stanfield's Motion to Dismiss Defendant/Third-Party Plaintiff Mercedes Homes' Third-Party Complaint and Incorporated Memorandum of Law (Doc. # 19, filed in case no. 6:01cv813), Defendant/Third-Party Plaintiff Mercedes Homes' Memorandum in Opposition to Dismiss the Third-Party Complaint (Doc. # 23, filed in case no. 6:01cv813), Defendant/Third-Party Plaintiff Mercedes

Homes' Memorandum in Opposition to Dismiss the Counterclaims (Doc. # 24, filed in case no. 6:01cv813), Plaintiff/Third-Party Defendant Eleanor Stanfields' Motion to Dismiss Defendant/Third-Party Plaintiff Mercedes Homes' Counterclaims and Incorporated Memorandum of Law (Doc. # 21, filed in case no. 6:01cv814), and Defendant/Third-Party Plaintiff Mercedes Homes' Memorandum in Opposition to Dismiss the Counterclaims (Doc. # 26, filed in case no. 6:01cv814). The Court has carefully considered Mercedes Homes' Counterclaims and Third-Party Complaints, Stanfield's and Depierro's Motions and accompanying memoranda, Mercedes Homes' Memoranda in Opposition, and is otherwise fully advised in the premises.

## I. BACKGROUND FACTS

In December 2000, Linda Depierro was recruited to work for Mercedes Homes ("Mercedes") as a sales associate by Linda Stanfield. Stanfield was a Sales Manager for Mercedes. At approximately the same time, Stanfield also recruited Michael Carver, a builder, to work for Mercedes. Stanfield represented to both Carver and Depierro that they would eventually be assigned to work at Mercedes' upscale subdivision, John's Cove. Depierro began work for Mercedes on February 28, 2001.

In July 2001, Depierro told Stanfield that Jimmy Ryan, a builder for Mercedes, was sexually harassing her. Stanfield and Depierro agreed that Stanfield would not communicate Depierro's allegations to any other members of Mercedes' management. The women also agreed that Stanfield would give Depierro a tape recorder so Depierro could record Ryan making

inappropriate statements to her. Once Ryan was caught on tape, the tape would be given to Stanfield's superiors at Mercedes.

Also, around this time, Depierro and Stanfield learned that Carver was not going to be assigned to John's Cove, but rather, Ryan would be the designated builder in the subdivision. Mercedes alleges that the two women concocted the story about the sexual harassment and intended on using the tape to force Mercedes to fire Ryan and give the John's Cove project to Carver.

Stanfield then told another Mercedes' sales associate, Melissa Gaudette, about the inappropriate statement made to Depierro. Stanfield also allegedly stated that they needed to bust Ryan, she had purchased the tape recorder, and she had taught Depierro how to use the recorder. Two to three weeks later, Gaudette contacted the division president of Mercedes and told him about Stanfield's and Depierro's plan.

The following day, August 15, 2000, the division president met with Stanfield to discuss Gaudette's allegations. Stanfield denied purchasing the tape recorder and planning to secretly record Ryan. Mercedes terminated Stanfield's employment for failing to comply with company policy, lying to the Division president, and "other legitimate business reasons."

On August 16, 2001, the division president met with Depierro to discuss Ryan's alleged inappropriate statement to her. During the meeting, the Division president asked Depierro why she had not followed company policy on reporting complaints of sexual harassment and asked her if she wanted to make a formal complaint.[1] Depierro declined to file a formal complaint.

---

[1] Mercedes' policy on sexual harassment advised employees "that any employee who is subjected to harassment or intimidation should ... contact their immediate supervisor, the company's

-3-

According to Mercedes, Depierro also told the division president that she would not be terminated or disciplined [sic]. (Mercedes Counterclaim ¶ 28). Then, approximately one week later, Depierro resigned and went to work for another employer under Stanfield's supervision.

Subsequently, Depierro filed a claim against Mercedes for violation of Title VII, 42 U.S.C. § 2000e, which alleged sexual harassment---hostile work environment, disparate treatment, and retaliation. Stanfield also filed a suit against Mercedes under Title VII for retaliation. In response, Mercedes filed counterclaims against both women and a third-party complaint against Stanfield. The counterclaims assert claims for civil conspiracy and claims for failure to obey corporate policy. The third-party complaint avers a claim for indemnity against Stanfield.

## II. STANDARD OF REVIEW

A court should not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see also Sea Vessel, Inc. v. v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994) (citation omitted). In evaluating a motion to dismiss a complaint, the court must accept all the alleged facts as true, and draw all inferences from those facts in the light most favorable to the plaintiff. See, e.g., Cruz v. Beto, 405 U.S. 319 (1972); Hunnings v. Texaco, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994). The court, however, does not generally accept as true conclusory allegations. South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n. 10 (11th Cir. 1996) (citing Associated

---

director of human resources, or another member of the corporation's senior management." The policy further provided "that all complaints of sexual harassment would be properly and confidentially investigated and that any employee who violated the policy, would be subject to an appropriate disciplinary action, up to and including discharge." (Mercedes' Counterclaim at ¶ 16).

Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir. 1974)). A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). Consideration of matters beyond the complaint is improper in the context of a motion to dismiss. Id.

## III. ANALYSIS

Stanfield and Depierro assert that Mercedes' counterclaims and third-party complaint fail to state a claim.[2] Mercedes responds that its claims are proper and have a basis in the law.[3]

### A. Count One of the Counterclaims

In Count One of the Counterclaims, Mercedes attempts to assert a claim against Stanfield and Depierro for Civil Conspiracy resulting from their purported agreements to violate corporate policy and Chapter 934, Florida Statutes (2001). As a preliminary matter, the Court finds that Mercedes' asserted claim for civil conspiracy to violate corporate policy is nothing more than an attempt to seek contribution or indemnity from Depierro and Stanfield. Accordingly, this purported claim will be addressed in Part B of this Order, infra.

"[A] civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy."

---

[2] Stanfield also avers that the third-party complaint was not filed in compliance with Rule 14(a) of the Federal Rules of Civil Procedure or the Case Management Order. Because the counterclaims and third-party complaint fail to state a claim, it is unnecessary to address these arguments.

[3] Although the motions to dismiss and memoranda in opposition were filed separately, the arguments made therein are similar and thus will be considered together.

Lipsig v. Ramlawi, 760 So.2d 170, 180 (Fla. 3d DCA 2000) (citing Raimi v. Furlong, 702 So.2d 1273, 1284 (Fla. 3d DCA 1997) (citations omitted)). The gist of a civil action for conspiracy is not the conspiracy itself, but the civil wrong which is done pursuant to the conspiracy and which results in damage to the plaintiff. Liappas v. Augoustis, 47 So.2d 582, 582 (Fla. 1950) (citations omitted). Under Florida law, "[a]n actionable conspiracy requires an actionable underlying tort or wrong." Florida Fern Growers Ass'n v. Concerned Citizens of Putnam County, 616 So.2d 562, 565 (Fla. 5th DCA 1993) (citation omitted); see also Williams Elec. Co. v. Honeywell, Inc., 772 F. Supp. 1225, 1239 (N.D. Fla.1991) ("[A]ctionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor.").

Mercedes has alleged that Stanfield and Depierro agreed to secretly tape record Ryan's conversations with Depierro and Stanfield purchased a tape recorder and gave it to Depierro in furtherance of their conspiracy. Section 934.03, Florida Statutes (2001), makes it unlawful to intercept any oral communication. Clearly, Stanfield's and Depierro's agreement to tape record Ryan surreptitiously was unlawful and the purchase of the tape recorder was in furtherance of the conspiracy. Furthermore, section 934.10 provides that the victim may sue for damages, and therefore, is the basis for the underlying required tort. However, the victim of the intended conspiracy between Stanfield and Depierro was not Mercedes, but rather, Ryan. Moreover, Mercedes has not suffered any damages as a result of this conspiracy as the illegal tape recordings

never occurred. Accordingly, Mercedes has failed to state a claim for civil conspiracy to violate section 934.03 and Count One of the Counterclaims should be dismissed.[4]

**B. Count Two of the Counterclaims and the Third-Party Complaint**

In essence, both Count Two of Mercedes' Counterclaim and Mercedes' Third-Party Complaint seek indemnity and/or contribution[5] from its former employees and Plaintiffs, Depierro and Stanfield, for its potential liability under Title VII as asserted in the Amended Complaints. Stanfield and Depierro rely on Northwest Airlines, Inc. v. Transport Workers Union of America, 451 U.S. 77 (1981) to support their argument for dismissal. Mercedes, contends that Northwest Airlines is inapplicable to this case.

In Northwest Airlines, the Supreme Court stated that a cause of action for contribution in a Title VII action "may have been created in either of two ways": (1) either expressly or impliedly by statute when Congress enacted Title VII; or (2) through the exercise of judicial power in creating federal common law. 451 U.S. at 90. Rejecting both theories, Supreme Court held that there is no

---

[4] Stanfield and Depierro assert that Mercedes lacks standing to bring this suit. To have standing a "plaintiff must [1] have suffered an 'injury in fact'--an invasion of a legally protected interest; a) that is concrete and particularized and b) 'actual or imminent, not conjectural or hypothetical'; [2] 'there must be a causal connection between the injury and the conduct complained of . . .'; [and 3] it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [a court presumes] that general allegations embrace those specific facts that are necessary to support the claim.'" Id. at 561. Here, however, it is clear that there is no injury to Mercedes.

[5] Often, parties confuse the two theories. Contribution is the right of a tortfeasor to collect from others responsible for the same tort after the tortfeasor has paid more than his proportionate share, the shares being determined as a percentage of fault. On the other hand, indemnification is the right of an injured party to claim reimbursement for its loss, damage, or liability from a person who has such a duty. Black's Law Dictionary (7th ed. 1999).

right of contribution either express or implied in Title VII, nor is there any federal common-law right to such relief.

The Court, however, did not address whether a right of indemnification, as opposed to contribution, may be implied under Title VII. The right to contribution and indemnification are no different in principle from other implied rights of action. Levit v. Ingersoll Rand Fin. Corp., 874 F.2d 1186, 1191 (7th Cir. 1989). Although the decisions in Texas Industries[6] and Northwest Airlines dealt only with the right of contribution, the legal framework established in these cases has been extended to the right to indemnity. Anderson v. Local 3, Intern. Broth. of Elec. Workers, AFL-CIO, 751 F.2d 546, 548 (2d Cir. 1984) (Title VII case); see also Levit, 874 F.2d at 1191; Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132 (2d Cir. 1999) (no right to contribution or indemnification of employers found liable under Fair Labor Standards Act of 1998); Mortgages, Inc. v. U.S. Dist. Ct. for Dist. of Nev. (Las Vegas), 934 F.2d 209, 212-13 (9th Cir. 1991) (finding no basis for recognizing a right of contribution or indemnification in a Federal Claims Act case); Green v. United States Dept. of Labor, 775 F.2d 964, 971 (8th Cir. 1985); Lipiro v. Remee Prods., 75 F. Supp. 2d 174, 176-77 (S.D.N.Y. 1999) (Title VII case); Rodolico v. Unisys Corp., 189 F.R.D. 245, 249 (E.D.N.Y. 1999).

Moreover, the Supreme Court made clear that where Congress has enacted a comprehensive legislative scheme that includes an integrated system of procedures, as with Title VII, courts should not "fashion new remedies that might upset carefully considered legislative programs" and that it would be "improper for us to add a right to contribution to the statutory

---

[6] Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 639 (1981) (no right of contribution in anti-trust cases).

rights that Congress created." Northwest Airlines, 451 U.S. at 97. Where the liability of a defendant is entirely a creature of federal statute and that statutory scheme is complete, the court may not provide a new remedy Congress decided not to adopt. Id. "The statutes make express provision for private enforcement in certain carefully defined circumstances, and provide for enforcement at the instance of the Federal Government in other circumstances. The comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies."[7] Id. at 93-94 (citations omitted); see Martin v. Gingerbread House, Inc., 977 F.2d 1405, 1408 (10th Cir. 1992) ("a third party complaint by an employer seeking indemnity from an employee is preempted" by the FLSA); Lyle v. Food Lion, Inc., 954 F.2d 984, 987 (4th Cir. 1992) (court should not "engraft an indemnity action upon this otherwise comprehensive federal statute," i.e., the FLSA); LeCompte v. Chrysler Credit Corp., 780 F.2d 1260, 1264 (5th Cir. 1986) (same).

Additionally, while "federal courts . . . have recognized a right to contribution under state law in cases in which state law supplied the appropriate rule of decision," state law creating a right of indemnity or contribution is inapplicable where the defendant's liability, for which indemnity or contribution is sought, arises solely from Title VII. Northwest Airlines, 451 U.S. at 97 n.38 (citations omitted). While it is not clear from a reading of Northwest Airlines that defendants in Title VII actions are forever, and under all circumstances, barred from seeking indemnity and

---

[7] Title VII was designed as a comprehensive solution for the problem of invidious discrimination in employment. Johnson v. Railway Exp. Agency, Inc., 421 U.S. 454, 457-58 (1975). The statutory scheme contemplates liability for the employer, who can discipline the employee, as opposed to liability for the individual employee, as a means of wiping out such discrimination. See Grant v. Lone Star Co., 21 F.3d 649, 653 (5th Cir. 1994); Miller v. Maxwell's Intern. Inc., 991 F.2d 583, 588 (9th Cir. 1993).

contribution, other courts have since interpreted Northwest Airlines to mean that the only two ways to find a right of contribution is either in Title VII itself or under federal common law, thus precluding the notion that state law may provide such a right. See American Fed'n of State, County and Mun. Employees, AFL-CIO v. City of N.Y., 599 F. Supp. 916, 919 (S.D.N.Y. 1984) (employer's right to contribution could only arise under two theories, either as an implied right of action under the statute or under federal common law); Anderson v. Local Union No. 3, Intern. Broth. of Elec. Workers, AFL-CIO, 582 F. Supp. 627, 630 (S.D.N.Y. 1984) (same), aff'd, 751 F.2d 546 (2d Cir. 1984); Gray v. City of Kansas City, Kan., 603 F. Supp. 872, 873 (D. Kan. 1985) (contribution barred in Title VII action under holding of Northwest Airlines); Forsberg v. Pacific N.W. Bell Tel., 622 F. Supp. 1147, 1149-50 (D. Or. 1985), aff'd, 840 F.2d 1409 (9th Cir. 1988) (where plaintiff did not name union in action, employer totally barred from joining the union in order to share any potential liability); see also Gilmore v. List & Clark Const. Co., 866 F. Supp. 1310 (D. Kan. 1994); E.E.O.C. v. Gard Corp., 795 F. Supp. 1070 (D. Kan. 1992).

Likewise, other courts have found that whether indemnity and contribution are available in connection with a federal statutory scheme is a question governed solely by federal law. See In re Olympia Brewing Co. Sec. Litig., 674 F. Supp. 597, 607 (N.D. Ill. 1987) (where indemnity and contribution are sought for a violation of a federal statute, court must treat the issue of the scope and limitations of indemnity and contribution as a question of federal law) (citation omitted); Anderson, 582 F. Supp. at 628 ("The question of whether contribution and indemnity are available under the federal civil rights laws should be governed by federal law. It would be anomalous if the availability of these remedies, as among defendants, varied according to the happenstance of the forum state in which the plaintiff brought the underlying action.").

Even if not specifically proscribed by Northwest Airlines and its progeny, it would be inconsistent to permit Mercedes to seek indemnity or contribution from its employees in light of the fact that the Mercedes could not hold either Stanfield, Depierro, or Ryan personally liable or seek to hold them liable in their individual capacity under Title VII. "The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991). Thus, suits against persons in their individual capacity are inappropriate under Title VII. Id. The Court may not permit Mercedes to shift its liability to its employees when the law is clear that the relief available under Title VII is against the employer, not the individual employee whose actions constitute a violation. While there may be policy reasons in favor of allowing an employer to seek indemnity or contribution from an employee whose actions have caused the employer to be liable under Title VII, "[i]t is not [the courts'] place simply to alter the balance struck by Congress . . . ." Northwest Airlines, 451 U.S. at 98.[8]

Accordingly, this Court joins with these other courts in finding that Northwest Airlines stands for the proposition that there is no right of indemnity or contribution under federal or state law for Title VII claims. Mercedes asks this Court to do what has been flatly proscribed---create a contribution remedy for a statutory violation when Congress has not manifested an intent that such

---

[8] Mercedes has not cited, nor has the Court found, any federal court decision permitting a defendant to seek indemnity or contribution in a Title VII case. The Court has, however, found a decision of the Oklahoma Court of Appeals which permitted an employer to pursue a state-law claim of indemnification. See Biggs v. Surrey Broad. Co., 811 P.2d 111 (Okla. Ct. App. 1991). Certainly that ruling is not binding on this Court, but more importantly, it does not persuade the Court to find in favor of Mercedes. That case fails to address the import of Northwest Airlines at all, and, further, it is not clear from the decision whether the plaintiff brought a Title VII claim only or whether a discrimination claim was also brought under state law.

a right exist. See Sears v. Atchison, Topeka & Santa Fe Ry., Co., 749 F.2d 1451, 1444 (10th Cir. 1984) (denying a union's request to apportion fault between it and the defendant employer in a Title VII action and finding that the Supreme Court, in Northwest Airlines, "was unwilling to create a contribution remedy for a statutory violation when Congress had not manifested an intent that a right of contribution should exist"). It would be improper to allow Mercedes to seek indemnity and/or contribution from its former employees under state law as is sought here. In short, the Court simply is not persuaded that Mercedes is entitled to seek indemnity or contribution from its former employees.

The Court also believes that Count II of the Counterclaims and that portion of Count I of the Counterclaims which alleges a civil conspiracy to violate company policy must be dismissed. Those claims allege that Stanfield and Depierro breached a duty of diligence and good faith relating to their employment and breached a duty to obey all reasonable rules and instructions of Mercedes. An employee owes his employer a duty of diligence and good faith and a cause of action for conspiring to breach this duty exists. See Kilgore Ace Hardware, Inc. v. Newsome, 352 So.2d 918, 920 (Fla. 2d DCA 1977). Nevertheless, the Court finds that these counts are, in effect, a further attempt to seek indemnity and contribution under Title VII and, for the reasons already set forth, must also be dismissed.[9] See Lyle, 954 F.2d at 987 (court found that employer's suit against two employees for breach of contract and fiduciary duty was, in effect, suit by employer to indemnify itself for its own violation of FLSA which is not permitted) (cited with approval in Martin, 977 F.2d at 1407); Green v. U.S. Dept. of Labor, 775 F.2d 964, 971 (8th Cir. 1985);

---

[9] Although the Court has not sanctioned Mercedes for bringing these meritless claims, these asserted claims are clearly worthy of sanctions.

Barbezat v. Arnell Group, 1997 WL 473484, *2 (S.D.N.Y. 1997); Gilmore, 866 F. Supp. at 1311-14.

## IV. CONCLUSION

For the foregoing reasons, it is therefore, **ORDERED** and **ADJUDGED** that:

1) Stanfield's Motion to Dismiss (Doc. # 19, filed in case no. 6:01cv813);

2) Stanfield's Motion to Dismiss (Doc. # 21, filed in case no. 6:01cv814); and

3) Depierro's Motion to Dismiss (Doc. # 18, filed in case no. 6:01cv813);

are **GRANTED**. Mercedes Homes' Counterclaims and Third-Party Complaint are dismissed with prejudice.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 4th day of March, 2002.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

Notice sent to:

    Joseph Egan Jr., Esq.
    Egan, Lev & Siwica, P.A.
    231 East Colonial Dr.
    P.O. Box 2231
    Orlando, FL  32802-2221

    Kathryn Sydny Piscitelli, Esq.
    Egan, Lev & Siwica, P.A.
    231 East Colonial Dr.
    P.O. Box 2231
    Orlando, FL  32802-2221

    Lindsay N. Oyewale, Esq.
    Egan, Lev & Siwica, P.A.
    231 East Colonial Dr.
    P.O. Box 2231
    Orlando, FL  32802-2221

    Patrick Francis Roche, Esq.
    Frese, Nash & Hansen, P.A.
    930 S. Harbor City Blvd., Suite 505
    Melbourne, FL  32901

    Frank Reese Pound Jr.
    1970 Michigan Avenue
    Building E
    Cocoa, FL  32922-5758